C. A. FASSEY *v.* THE CITY OF NEW ORLEANS.

When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply those principles to determine what ought to be the incidents to a contract, which are required by equity.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J.
    *Durant & Hornor* for plaintiff.   *Thos. H. Hewes* for defendant and appellant.

ILSLEY, J.   The plaintiff was one of the city assessors in the year 1862, under and in conformity with the amended city charter, approved by the Legislature on the 20th March, 1856.

The duties devolving on assessors are clearly defined by the charter, and the compensation was, by Article 87, to be fixed by the common council.

FASSEY
v.
NEW ORLEANS.

What compensation was so fixed by the council is not shown in the record; but it is proved that, had all the services which devolved on the plaintiff as assessor, been performed, or he was legally dispensed from completing them, the amount stated by him in his bill (two thousand six hundred and sixty-two dollars and thirty cents) would have been the correct sum, and that there would have been still due to him the balance claimed, of nine hundred and eighty-four dollars and sixty-eight cents.

The city pleaded the general issue, without setting up any special defence.

Judgment was rendered by the court below, in favor of plaintiff, for the whole amount claimed, and from this judgment the city has appealed.

By the said charter, the assessors were to act in three ways : 1. As assessors *simply*. See section 77. 2. As members of the board of assessors (§ 43); and, 3. As members of the board of supervisors of assessment. § 25.

Each assessor acted separately and alone for his assessment district, until his assessment roll was completed, when it was to be submitted to the board of assessors, to adopt, alter or correct it. §§ 75, 76.

On or before the 15th August of each year, it was the duty of the assessors to make fair copies of their assessment rolls, and leave them with the secretary of the board, and to give notice, in the official journal of the common council, of their having completed such assessment. § 77. By section 78, public notice, to the inhabitants or owners of property, was to be given, that the assessment rolls were deposited at a certain place for inspection, and that the assessors would meet at a certain day, at the expiration of the thirty days, and at a place to be specified in the notice, to receive assessments, on the application of any person conceiving himself aggrieved. By section 81, the assessment rolls were to be certified in the manner thereby required ; and, by section 90, the board of supervisors of assessments were annually, on the *first Monday of October*, to meet for the purpose of examining the several assessment rolls transmitted to them, and equalize and correct the valuations made therein, in accordance with the said section ; and, by section 89, a forfeit of one thousand dollars was to be incurred by any supervisor of assessment who neglected, or for any cause omitted to perform his duties.

Whatever services were performed by the plaintiff, and they seem to have consisted of making his out-door assessment, and the preparing his tax roll, and his presumed attendance at the meetings of the board of assessors, which were held in July, 1862, the plaintiff was removed from his office by the military authorities, some time in August, 1862; and, although all the functions of his office for that year were not, necessarily, then fully performed, as his services were needed as a member of the board of supervisors of assessments, which only commenced in October, the most arduous duty, to wit : the out-door assessment and his tax roll, had been then completed, awaiting only the action of the board of supervisors; which board, however, afterwards approved his assessment roll, and the taxes in his district were collected under it.

During the year 1862, the city being in the possession of the United States military authorities, and its municipal affairs under their exclusive.

control, the plaintiff was removed by them from his office, and a new incumbent was put by them in his place, which was a measure provided for in case of a vacancy occurring by *death, removal, resignation or otherwise*. See section 86.

Conceding that the amount for the whole services be correctly stated at $2,662 30, the question is here presented, whether, under all the circumstances, he can lawfully demand a larger amount than that which has already been paid to him ? Whether the removal was properly made or not, is immaterial. It suffices that it was made by the military authorities, who recognized no other than military or martial law, and they controlled the situation, absolutely. An examination, therefore, of the plaintiff's bill of exceptions becomes unnecessary. The removal of the plaintiff from his office was *his* misfortune ; and, if it entailed on him a loss, his, unfortunately, was not an exceptional case.

Such other duties remained to be performed by the plaintiff, were fulfilled by his successor, who was paid for his services ; but how much he was paid therefor we are not informed.

If the work, actually performed by the plaintiff, exceeded in value what he has received, the city would be, in equity, bound to pay him the surplus; but, what that excess would amount to, is not disclosed by the record.

Were it not fair to presume that the account rendered by him in 1863, and then paid to him, was the only one that would have been sanctioned at that time, we should have deemed his claiming then nothing more than his own estimate of the value of his services, and that his present demand was an after-thought; but, as it is, we think the ruling of the court in the case of *Lambert* v. *King*, 12 A. 662, should prevail, and that he might well invoke Article 1960 of the Louisiana Code. We shall, therefore, only dismiss his motion, as in case of non-suit.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be avoided, annulled and reversed.

It is further ordered, adjudged and decreed, that the plaintiff's action be dismissed, and that he pay the costs in both courts.